## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| KAREN ROBERTS, | § § § | Case No. |
| Plaintiff, | § § | **COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT** |
| v. | § § | **COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER** |
| NATIONAL CREDIT ADJUSTERS, LLC | § § | **PROTECTION ACT, THE TEXAS DEBT COLLECTION PRACTICES** |
| Defendant. | § § | **ACT AND OTHER EQUITABLE RELIEF** |
| | § § § | **JURY TRIAL DEMANDED** |

### PARTIES

1.  Plaintiff, Karen Roberts ("Karen"), is a natural person who resided in Plano, Texas, at all times relevant to this action.

2.  Defendant, National Credit Adjusters, LLC ("NCA"), is a Kansas limited liability company that maintained its principal place of business in Hutchinson, Kansas, at all times relevant to this action.

### JURISDICTION AND VENUE

3.  Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4.  Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over the Karen's claim under the Texas Debt Collection Practices Act ("TDCPA"), Tex. Fin. Code §§ 392,

*et seq.*, because that claim shares a common nucleus of operative facts with Karen's claim under the FDCPA.

5.   Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6.   Before NCA began contacting Karen, it and Karen had no prior business relationship and Karen had never provided express consent to NCA to be contacted on her cellular telephone.

7.   NCA regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8.   The principal source of NCA's revenue is debt collection.

9.   NCA is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10.  As described, *infra*, NCA contacted Karen to collect a debt that was incurred primarily for personal, family, or household purposes.

11.  This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12.  Karen is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13.  Within the past twelve months, NCA began calling Karen on her cellular phone ending in -3312 in connection with the collection of a debt.

14.  On more than one occasion, NCA called Karen multiple times a day.

15.  During one communication, around the end of September 2016, Karen communicated her desire that NCA cease calling her and then hung up before NCA responded.

16.  By being hung up on and told to stop calling, NCA was put on notice that any future calls from NCA were inconvenient.

17. Despite this communication, NCA called Karen the following day and continued to call Karen on her cellular phone in connection with the collection of a debt.

18. Karen believes NCA called her more than 25 times after she communicated her desire that NCA cease calling her.

19. NCA's collection efforts, including but not limited to its telephone calls, caused Karen emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

20. NCA's collection efforts also intruded upon Karen's privacy.

21. In addition, each time NCA placed a telephone call to Karen, NCA occupied Karen's telephone number such that Karen was unable to receive other phone calls at that telephone number while NCA was calling her.

22. NCA's telephone calls also forced Karen to lose time by having to tend to NCA's unwanted calls.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

23. Karen re-alleges and incorporates by reference Paragraphs 6 through 22 above as if fully set forth herein.

24. NCA violated 15 U.S.C. § 1692c(a)(1) by calling Karen at a time or place known to be inconvenient for Karen.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

25. Karen re-alleges and incorporates by reference Paragraphs 6 through 22 above as if fully set forth herein.

26. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*,

591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

27.  "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

28.  The likely effect of NCA's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Karen.

29.  NCA violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Karen in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

30.  Karen re-alleges and incorporates by reference Paragraphs 6 through 22 above as if fully set forth herein.

31.  NCA violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FOUR

### Violation of the Telephone Consumer Protection Act

32.  Karen re-alleges and incorporates by reference Paragraphs 6 through 22 above as if fully set forth herein.

33.   Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

34.   The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

35.   "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

36.   A telephone dialing system with predictive dialer functionality is an ATDS within the meaning of the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

37.   NCA used a telephone dialing system with predictive dialer functionality to place calls to Karen on her cellular telephone.

38.   The TCPA provides, in part:

> (b)      RESTRICTIONS   ON   THE   USE   OF   AUTOMATED   TELEPHONE EQUIPMENT.—
>
> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

39.   The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

40.   Karen was the "called party" in each telephone call NCA placed to Karen's cellular telephone.

41.   The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to

receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

42.  NCA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Karen on her cellular telephone without Karen's prior express consent or after such consent had been revoked.

43.  In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

44.  The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

45.  In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

46.  Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

47.   NCA voluntarily placed telephone calls to Karen's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

48.   NCA's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## COUNT FIVE

### Violation of the Texas Debt Collection Practices Act

49.   Karen re-alleges and incorporates by reference Paragraphs 6 through 22 above as if fully set forth herein.

50.   NCA is a "debt collector" as that term is defined in the TDCPA, Tex. Bus. & Com. Code § 392.001(6).

51.   Karen is a "consumer" as defined by Tex. Fin. Code § 392.001(1).

52.   NCA willingly and knowingly violated Tex. Fin. Code § 392.302(4) by communicating with Karen with such frequency as can reasonably be expected to harass Karen, or engaging in other conduct which can reasonably be expected to abuse or harass Karen.

## JURY DEMAND

53.   Karen demands a trial by jury.

## PRAYER FOR RELIEF

54.   Karen prays for the following relief:

   a.   Judgment against NCA for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

   b.   An order enjoining NCA from placing further telephone calls to Karen's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

   c.   Judgment against NCA for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call NCA made in violation of the TCPA.

d.  Judgment against PRA for violations under Subchapter E, Chapter 17, Business &

Commerce Code pursuant to Tex. Fin. Code § 392.404.

e.  For such other legal and/or equitable relief as the Court deems appropriate.


RESPECTFULLY SUBMITTED,


Date: October 6, 2017          By:____/s/ Jeffrey S. Hyslip_____
                               Jeffrey S. Hyslip, Esq.
                               Ohio Bar No. 0079315
                               1100 W. Cermak Rd., Suite B410
                               Chicago, IL  60608
                               Phone: 312-380-6110
                               Fax: 312-361-3509
                               Email: jeffrey@lifetimedebtsolutions.com
                               *Attorney for Plaintiff*